IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LA'ROY JONATHAN CLOYD, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-cv-1088 |
| ) | |
| VERNESTENE DULIN, L. McKENDRA, ) | Judge Trauger |
| RAY DOIZER, MICHAEL CRAFT, DARON HALL, ) | |
| TONY WILKES, DAN WEIKAL, ) | |
| JOHN HUDSON, Chief Administrator, ) | |
| MAYOR CARL DEAN, ) | |
| CHIEF DEPUTY FORD, ) | |
| JAMIE JOHNSON, Chief of Security, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff La'Roy Jonathan Cloyd, a state inmate presently detained at the Davidson County Sheriff's Office – Criminal Justice Center ("CJC") in Nashville, Tennessee filed his *pro se* complaint and amended complaint in this action, seeking damages and other relief under 42 U.S.C. § 1983. Because the plaintiff is a prisoner who proceeds *in forma pauperis* against government officials, the complaint, as amended, is before the court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

**I.     FACTUAL ALLEGATIONS**

In his original complaint, the plaintiff named as defendants Vernestene Dulin, as head of ABL food services,[1] L. McKendra, Ray Doizer [sic], Michael Craft, Daron Hall, Tony Wilkes, and Dan Weikal. In his motion to amend his complaint, he requests permission to add as defendants John Hudson, Chief Administrator; Mayor Carl [sic] Dean; Chief Deputy Ford; and Jamie Johnson, Chief of Security.[2] Otherwise,

---

[1] The plaintiff does not spell out this information, but the Court takes judicial notice that ABL Management, Inc. is the entity in contract with the Davidson County Sheriff's Office to provide food services to inmates housed at the CJC.

[2] The plaintiff also alleges that jail officials have refused to give him all the ABL employees' full names so that he can add them to his lawsuit.

the factual allegations in the proposed amended complaint are identical to those in the original complaint.

The plaintiff states that he is allergic to carrots and that he has been "gased and estracted [sic] from [his] cell" because ABL employees keeps putting carrots in his food and on his food trays. (ECF No. 1, at 3; *see also* ECF No. 5-1, at 3.[3]) The plaintiff alleges that he has written numerous grievances about this problem, to no avail. He claims that numerous jail officials at the CJC can attest to the fact that he has had to ask these officials to return his tray to the kitchen when his food has carrots in it. The "kitchen" picks the carrots out of the plaintiff's food and sends the tray back. When the plaintiff points out to jail officials that his food still has carrots in it, his tray is returned to the kitchen and "food service then recooks [plaintiff's] food." (*Id.*) According to the plaintiff, in these instances he may have to wait an additional hour to get his food. The plaintiff alleges that on other occasions, he has been unable to eat the food tray sent to him and instead has been required "to s[ell] his tray for a bag of chips." (ECF No. 1, at 5.) The plaintiff claims that "these people" are "knowingly trying to kill him" by putting carrots in his food. (ECF No. 1, at 4.) The plaintiff further alleges that ABL employees "are not doing their job because if they was watching supervising all diet trays . . . then I would never receive no carrot[]s on my tray." (ECF No. 1, at 5.)

The plaintiff, in addition to his carrot allergy, is also a Muslim who, by request, receives a halal diet.[4] In the cover letter enclosed with his original complaint, he alleges that Muslim inmates at the CJC are "fed the same thing breakfast, lunch, and dinner" and that ABL employees are trying to get those inmates who are on Muslim/halal diets off that diet. (ECF No. 1, at 5.) In a recently submitted notice to the court (ECF No. 9), the plaintiff alleges more specifically that he receives the same diet every day: For breakfast, he receives a small container of peanut butter, two jellies, 2 slices of bread, one cup of cereal, and two milks. For lunch he receives two slices of bread, one and a half cups of beans, one cup of raw lettuce or cabbage, one small

---

[3] The factual allegations in the proposed amended complaint submitted with the plaintiff's motion to amend his complaint are identical to those in the original complaint.

[4] According to the Islamic Food and Nutrition Council of America and Islamic Services of America, a "halal," or "lawful" diet, prohibits items deemed "haram" (or "unlawful"), including pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products. *See* Islamic Food and Nutrition Council of America, *What is Halal?*, http://www.ifanca.org/cms/wpages/detail/4ca47c89-ec4c-41ba-ac38-1c111b830f0c (last visited Nov. 28, 2012); Islamic Services of America, *What is Halal?*, http://www.isaiowa.org/Content/Halal-Information.aspx (last visited Nov. 28, 2012).

cup of raw vegetables, and one fruit. At dinner he receives "rice out of a bag," "meat [that] is not real meat," raw vegetables, two slices of bread, and one fruit. The plaintiff complains that peanut butter and beans "are not a nutritional supplement for meat." (ECF No. 9, at 1.) He wrote a grievance and was told that if he wants to change his diet, he should talk to the Chaplin. (ECF No. 9, at 1.) This supplement, like the complaint, is certified as true under penalty of perjury.

In a separately filed sworn notice, the plaintiff alleges that jail officials are opening his certified legal mail, and he "guess[es]" that jail officials are reading and making copies of his legal mail. (ECF No. 10). He does not actually state a claim based on this allegation. Rather, he asks, "Is this legal??" (ECF No. 10.) He states he has filed a grievance based on this practice, which was denied.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a civil complaint or any portion of a complaint filed *in forma pauperis* that (1) fails to state a claim for which relief can be granted, or (2) is frivolous. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.

1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.    LAW AND ANALYSIS

To state a claim under § 1983, a plaintiff must (1) identify a right secured by federal law or the United States Constitution, and (2) demonstrate the deprivation was caused (3) by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). All parts of this test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). Even assuming that the defendants, acting in their official capacity, may be deemed to have acted under color of state law, which is debatable, the court finds, as set forth below, that the plaintiff fails to allege facts that show the deprivation of any right secured by federal law or the Constitution.

### A.    The Plaintiff's Food-Related Complaints

The Eighth Amendment's prohibition of cruel and unusual punishment applies not only to punishments imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976).[5] An Eighth Amendment conditions-of-confinement claim has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a [jail] official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). Second, the official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

---

[5] If the plaintiff is being held on pretrial detention, he is shielded from cruel and unusual punishments by the Due Process Clause of the Fourteenth Amendment, *Miller v. Calhoun Cnty.*, 408 F. 3d 803, 812 (6th Cir. 2005), which provides similar if not greater protections than the Cruel and Unusual Punishments Clause in the Eighth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). For the sake of simplicity, and because the plaintiff's status is not clear from the complaint, the court refers to the Eighth Amendment in the discussion herein.

With respect to the food-allergy allegations, although the plaintiff alleges repeated occasions when he has been served food with carrots in it, he does not indicate that he has suffered any serious harm resulting from these incidents. The only harm alleged is that the plaintiff has been "gased and estracted [sic] from [his] cell." (ECF No. 1, at 3.) The meaning of this phrase is uncertain, but the plaintiff does not allege that he has needed or sought hospitalization or medical treatment resulting from having been served carrots. In fact, he alleges that, on many of the occasions when he has been served food with carrots in it, he has sent the tray back to the kitchen, where the employees either pick out the carrots or recook the food altogether. The plaintiff experiences some delay in receiving his food in those instances, but not an unreasonably long delay. The plaintiff does claim that, on some occasions, he has eaten "a bag of chips" instead of his food tray, but he does not allege that any nutritional deficiencies have resulted from his occasional trade off. In other words, the plaintiff's allegations suggest that the jail's policies and procedures pertaining to the monitoring and enforcement of health-related dietary restrictions are not as rigorous as they could be, but the plaintiff does not show that he has suffered a deprivation serious enough to "result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. His allegations show only that he has been inconvenienced on occasion. In addition, even broadly construed in the plaintiff's favor, the alleged facts do not suggest a state of mind on the part of jail officials of "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). The plaintiff therefore fails to state a claim under § 1983 relating to the jail's failure to comply with his health-related dietary restrictions.

The plaintiff also alleges that the halal diet provided at the CJC is nutritionally inadequate. More specifically, he complains about the lack of real meat, as opposed to artificial meat, and asserts that peanut butter and beans are not adequate substitutes for meat. It appears the plaintiff may be attempting to state a claim under the First Amendment and/or the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), for interference with the practice of his religion, and under the Eighth Amendment for failure to provide adequately nutritious food. The allegations do not support his claims.

First, Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided halal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not "haram" (impermissible). *See Abdullah v. Fard*, No. 97–3935, 1999 WL 98529 at *1 (6th Cir. Jan. 28, 1999)

(where Muslim prisoner alleged that a prohibition against non-halal meat was fundamental to his religion, the court found that he could comply with this prohibition by eating vegetarian meals and that his "First Amendment claim fails because the disputed policy did not force him to violate his religion"). Moreover, as long as a plaintiff is given an alternative to eating non-halal meat, he does not suffer a "substantial burden" to his religious beliefs under the RLUIPA. *See, e.g.*, *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810–12 & n.8 (8th Cir. 2008) (the prison's meal plan regulations did not substantially burden a Muslim inmate's free exercise of religion where the inmate had access to vegetarian entrees, some of which he had to pay for himself); *Watkins v. Shabazz*, 180 F. App'x 773, 775 (9th Cir. 2006) (no RLUIPA violation when prisoners given alternatives to eating non-halal meat such as a nutritionally equivalent meat substitute or finding an outside religious organization to contract with the prison to provide halal meat). The plaintiff in this case does not allege that he is not provided substitutes for non-halal meat. Rather, the plaintiff is simply not happy with the substitutions offered. While the plaintiff clearly would like to have halal meat entrees rather than vegetarian entrees and non-meat substitutes, his food preferences, as a prisoner, are limited. As the Supreme Court aptly stated in *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), "the Constitution does not mandate comfortable prisons."

Insofar as the plaintiff may be attempting to state a claim under the Eighth Amendment, the law is clear that state officials are required to provide prisoners "adequate food." *Farmer*, 511 U.S. at 832. More particularly, the Eighth Amendment requires that inmates be provided well balanced, nutritional meals sufficient to preserve health. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). The Eighth and First Amendment requirements overlap insofar as "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). "If the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id.* Because the plaintiff here does not allege facts suggesting that he has suffered any harm resulting from being limited to an essentially vegetarian diet, he fails to state a claim under the Eighth Amendment. *See Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (affirming dismissal of claim based on inadequate nutrition where the plaintiff failed to allege that his health suffered as a result of the alleged deprivation of meals). The court concludes that the plaintiff's factual allegations, construed as true,

fail to establish a violation of the plaintiff's federal rights.

**B.    The Opening of Plaintiff's Legal Mail**

Finally, the plaintiff alleges that jail officials are opening his certified mail from the court, and he "guess[es]" that jail officials are reading and making copies of his legal mail. (ECF No. 10). He states that he has filed a grievance, which was denied. He asks, "Is this legal??" (ECF No. 10.)

Regardless of whether prison officials' opening of mail from the court outside the addressee's presence violates prison regulations, the plaintiff's allegations in this case are insufficient to establish a violation of his federal constitutional rights. The plaintiff clearly has a liberty interest in receiving his mail, *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010), but he has not alleged an interference with that right. In addition, the plaintiff has a First Amendment right to be free from unreasonable mail censorship, *id.* at 760–70, but he has not alleged violation of that right either.

Further, although a correctional facility's interference with a prisoner's legal mail might give rise to a First Amendment claim for denial of access to the courts, the plaintiff here does not allege that the prison officials' conduct in this case has in any way affected his access to the courts. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("In order to state a claim for denial of meaningful access to the courts, . . . plaintiffs must plead and prove prejudice stemming from the asserted violation."); *Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001) (prisoner's claim for interference with access to courts through opening legal mail failed "as he alleged no prejudice to any pending litigation"); *see also Lewis v. Cook Cnty. Bd. of Comm'rs*, 6 F. App'x 428, 430 (7th Cir. 2001) (plaintiff could not prevail when he did "not describe a single legal case or claim that was in any way thwarted because the mail room staff opened his legal mail."); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001) ("Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or 'hindered his efforts to pursue a legal claim.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996))); *see also Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim." (internal quotation marks and citations omitted)). There are no such allegations here. The court therefore finds that the complaint fails to state a claim under

§ 1983 based on jail officials' allegedly opening, and possibly reading, the plaintiff's legal mail outside his presence.

**IV.    CONCLUSION**

For the reasons set forth herein, the plaintiff's claims will be dismissed for failure to state a claim for which relief may be granted. An appropriate order is filed herewith.

                                          Aleta A. Trauger
                                          United States District Judge